# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |  |
|---|---|---|
| BRADLEY ALBERT, PATRICK KNIERY, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | CIVIL ACTION |
|     Plaintiffs, | ) | |
| v. | ) | FILE NO. 1:16-CV-03072-WSD |
| | ) | |
| HGS COLIBRIUM, INC., | ) | |
| | ) | Before the Honorable |
|     Defendant. | ) | William S. Duffey, Jr. |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT

1600 Atlanta Financial Center
3343 Peachtree Road NE
Atlanta, Georgia 30326
Telephone: (404) 233-7000
Facsimile: (404) 365-9532
jlockett@mmmlaw.com

**MORRIS, MANNING & MARTIN, LLP**

  John A. Lockett III
  Georgia Bar No. 455549

*Of Counsel:*
Daniel I. Prywes
Admitted *Pro Hac Vice*
MORRIS, MANNING & MARTIN, LLP
1401 Eye Street, N.W., Suite 600
Washington, DC 20005
Telephone: (202) 971-4182
Facsimile: (202) 408-5146
dprywes@mmmlaw.com

Date: March 9, 2017

*Attorneys for Defendant HGS Colibrium, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ..................................................................................2

ARGUMENT ..........................................................................................................5

I.     GENERAL REQUIREMENTS FOR CONDITIONAL CERTIFICATION
       OF AN FLSA COLLECTIVE ACTION ....................................................5

II.    PLAINTIFFS HAVE FAILED TO SHOW THAT THEY ARE
       "SIMILARLY SITUATED" TO THE OTHERS..........................................7

       A.    Plaintiffs Failed to Provide "Detailed" Affidavits As Required.............7

       B.    The Determination of Liability For All SRs Would Require Thousands
             of Individualized Inquiries Into Each SR's Daily Activities.................11

       C.    Plaintiffs Do Not Claim or Show That All Members of the Putative
             Class Worked Unpaid Overtime .........................................................19

       D.    Plaintiffs Have Not Sufficiently Shown That There Are Other
             "Similarly Situated" Employees Who Desire to "Opt-In" to This Case
             ..............................................................................................................20

III.   EVEN IF THE COURT GRANTS THE MOTION, THE PLAINTIFFS'
       PROPOSED NOTICE SHOULD BE REVISED..........................................22

CONCLUSION .....................................................................................................25

## INTRODUCTION

For four reasons, the Court should deny Plaintiffs' motion for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 201 *et seq.*

*First*, the four Declarations submitted by Plaintiffs Albert and Kniery, Scott Kuechenmeister, and Rita Lacey (hereinafter the "Declarants") are all virtually identical, extremely vague, and rely on unsupported "beliefs" and "good-faith" estimates rather than specific facts to show that Plaintiffs are "similarly situated" to others. Such Declarations fall short of the "detailed" allegations that are required.

*Second*, there are significant differences among the 62 Sales Representatives ("SRs") who worked on the Colorado HealthOp account in terms of the number of hours they worked on a weekly basis, their time-keeping practices (including their own failure to clock in or out), their receipt of overtime pay, and their supervision by different team leaders (known as "team leads"). In addition, the determination of liability for each SR will require, in the aggregate, thousands of highly individualized determinations of each one's daily activities, using a variety of data sources such as time records, call-center phone logs, and the SRs' personal cellphone and email records. In similar cases involving the need for "correction-by-correction mini-trials," courts have denied conditional certification.

*Third*, a collective action is not appropriate since many SRs never worked even close to forty hours a week, and liability cannot be established on a class-wide basis.

*Fourth*, Plaintiffs have failed to show that other SRs desire to opt-in to this suit since it was filed almost six months ago.  Only four of 62 SRs have expressed interest, and all four were associates who initially communicated about overtime concerns in April 2015.  No one outside that insular group has shown any interest.

## FACTUAL BACKGROUND

In the relevant period (September 1, 2014 to March 31, 2015), Colibrium operated a telephone call center in Roswell, Georgia.  It hired non-exempt licensed sales agents (who Plaintiffs call "SRs") to sell health-insurance policies offered by Colibrium's clients.  (Exhibit A, Declaration of Sharon W. Boone, ¶¶ 3-6.)

The four Declarants were among 62 SRs who sold insurance policies of Colorado HealthOp (a Colibrium client) during the relevant period.  All the SRs were advised that they were entitled to time-and-a-half pay for all overtime worked, and that was also stated in Colibrium's employee handbook.  (Id. ¶ 24-27.)

The four Declarations submitted by Plaintiffs are virtually identical.  (Pl. Mem., Exs. 1-4.)  As discussed further below, (1) they all "estimate in good faith" that each Declarant worked the same 48 hours each week without payment for

overtime, and (2) they all "believe" that "all" other SRs were similarly not paid for overtime.[1]  No details were provided.

The Declarations allege that unnamed "supervisors" had a practice of (1) instructing SRs to log out but to continue working off-the-clock, and (2) altering time records to ensure that no overtime work was recorded.  (Pl. Mem. at 5.) Colibrium denies these allegations.  (Ex. A, Boone Decl. ¶ 23, 51.)

There were no secrets about time records at Colibrium:  SRs could see their time records and all adjustments on the "Replicon" timekeeping system.  (Id. ¶ 33.) Numerous adjustments to the time records were made by "team leads" for legitimate reasons, such as when an SR forgot to clock in or clock out, double punched in or out, or when the Replicon time-keeping system was not operational. (Id. ¶ 30.)  For example, adjustments were made on 44 of the 118 days worked by Plaintiff Albert, and on 96 of the 108 days worked by Plaintiff Kniery.  (Id. ¶ 47.)

The 62 SRs who worked on the Colorado HealthOp account differed in a variety of ways.  The time records show that some never approached working 40 hours in a week, and 27 SRs averaged less than 30 hours per workweek.  (Ex. A, Boone Decl. ¶ 17.)  At least eight SRs never worked more than 30 hours per week.

---

[1]     *See* Pl. Mem., Ex. 1, Albert Decl. ¶¶ 9, 22; Ex. 2, Kniery Decl. ¶¶ 9, 22; Ex. 3, Kuechenmeister Decl. ¶¶ 9, 22; Ex. 4, Lacey Decl. ¶¶ 9, 22.

(Id.)  Some SRs (including three of the Declarants) received overtime pay (over 26 hours for Ms. Lacey), while some (like Mr. Bradley) received none.  (Id. ¶¶ 36-40.)

Some SRs frequently failed to clock in or out on a work day (as occurred on 33 days for Mr. Kniery), while this occurred less frequently for others.   (Id. ¶ 41.) The various SRs worked at Colibrium for different periods of time, with some working before or after the peak selling season and a few working two weeks or less.  (Id. ¶¶ 12-14.)  Some SRs targeted special types of customers (e.g., small businesses, or Native Americans).  (Id. ¶ 16.)  The SRs began and ended work on different daily work schedules.  (Id. ¶¶ 20, 21, 52.)

The SRs also worked for different team leads, who had different practices in making time adjustments.  For example, one team lead made time adjustments on 41.7% of the 103 workdays in which he supervised Mr. Albert, and another team lead made time adjustments in only 6.7% of the 15 workdays in which he supervised Mr. Albert.  (Ex. A, Boone Decl. ¶¶ 46, 47.)

For these reasons, the determination whether each SR worked more than 40 hours per week is a highly individualized inquiry requiring an examination of dozens of adjustments for each SR, and likely thousands for all 62 SRs.  In addition, to determine whether each SR worked overtime, a highly individualized analysis is required of several data sources available for each SR.  These include,

4

*inter alia*, Colibrium time records for each SR (showing originally entered time and entries showing all time adjustments), logs showing telephone calling activity by each SR during each workday, and each SR's personal email and telephone records which show when they were not working (as personal calls or emails were prohibited by Colibrium during working hours).  (Boone Decl. ¶¶ 31, 48-50.)

## ARGUMENT

## I.   GENERAL REQUIREMENTS FOR CONDITIONAL CERTIFICATION OF AN FLSA COLLECTIVE ACTION

Subject to exceptions, the FLSA requires an employer to pay overtime for work in excess of 40 hours per week.  28 U.S.C. § 207(a)(1).  An employee may seek to bring a "collective action" to enforce this FLSA requirement "in behalf of himself . . . and other employees similarly situated."  28 U.S.C. § 216(b).

"The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court."  Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001).  While the standard for conditional certification is lenient, it is not a blank check for FLSA plaintiffs.  As this Court explained:

> The Eleventh Circuit encourages district courts to perform a two-step process to certify a collective action under Section 216(b).  . . . In the initial so-called "notice stage," the question is whether notice of the action should be given to potential class members. . . . Relying on the pleadings and affidavits submitted by the parties, the court applies a "fairly lenient standard" that "typically results in 'conditional certification' of a representative class."  Plaintiffs bear the burden of

5

establishing that they are 'similarly situated' to the employees they seek to represent. . . . <u>Unsupported, generalized allegations of similar[it]y are not sufficient</u>. . . .

The plaintiffs may meet this burden, which is not heavy, "by making substantial allegations of class-wide discrimination, that is, <u>detailed allegations supported by affidavits</u> which successfully engage defendants' affidavits to the contrary." . . . Plaintiffs are required only to show that they and the potential class-members are similarly, not identically, situated. . . . Plaintiffs "must [at least] make <u>some rudimentary showing of commonality between the basis for [their] claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions</u>."

<u>Butz v. Amware Distribution Warehouses of Georgia, Inc.</u>, No. 1:13-cv-3204-WSD, 2014 WL 1513172, at *6 (N.D. Ga. April 16, 2014) (emphasis added; internal citations omitted).

Furthermore, certification must pass an efficiency test. Even though a plaintiff need not show "a unified policy, plan, or scheme" to obtain conditional certification, "'some identifiable facts or logical nexus must bind the claims so that hearing the cases together promotes <u>judicial efficiency</u>.'" <u>Butz</u>, 2014 WL 1513172, at *7 (citation omitted) (emphasis added).

Pursuant to these principles, and as shown in Part II below, motions for conditional certification have been denied in circumstances like those presented here.

6

## II.   PLAINTIFFS HAVE FAILED TO SHOW THAT THEY ARE "SIMILARLY SITUATED" TO THE OTHERS

Colibrium denies the allegation that it failed to pay overtime required by the FLSA.  But the Court's task in this motion is not to make credibility determinations about whether there was "an actual violation of law."  <u>Kreher v. City of Atlanta, Georgia</u>, No. 1:04-cv-2651-WSD, 2006 WL 739572, at *4 (N.D. Ga. March 20, 2006).  Rather, it is to determine whether the Plaintiffs have shown that they are "similarly situated" to the putative class.  <u>Id</u>.  We focus on that issue.

### A.   Plaintiffs Failed to Provide "Detailed" Affidavits As Required

The four Declarations submitted by Plaintiffs are all nearly identical, "cookie-cutter" statements that are void of specificity.  Each one parrots almost *verbatim* the language of the Amended Complaint (Dkt. No. 21, ¶ 41) alleging that managers acted to eliminate any record of overtime hours.[2]  Each Declaration "estimate[s] in good faith" that the Declarant worked the same "approximately forty-eight (48) hours in a typical workweek," including the week of November 2, 2014,[3] but none provide any foundation to support that identical "estimate."

---

[2]   *See* Albert Decl. ¶ 14; Kniery Decl. ¶ 14; Kuechenmeister Decl. ¶ 14;  Lacey Decl. ¶ 14.

[3]   *See* Albert Decl. ¶¶ 9-10; Kniery Decl. ¶¶ 9-10; Kuechenmeister Decl.  ¶¶ 9-10; Lacey Decl. ¶¶ 9-10.

Most importantly, none of the Declarants provided any foundation for their statements that "I believe the defendants required all SRs to perform work on-the-clock and/or off-the-clock for which they were not fully compensated," and "I believe that defendant's managers adjusted the SRs' hours to reflect that they worked less than 40 in a workweek."[4]  (Emphasis added.)  Thus, Plaintiffs are asking this Court to conditionally certify a collective action based on nothing more than an unsupported and unexplained "belief" of liability to a class of all SRs.

While Plaintiffs correctly note that their burden is "not a heavy one" at the conditional-certification stage (Pl. Mem. at 8), they cite no case in which certification was permitted on such nebulous grounds.

"Plaintiffs bear the burden of establishing that they are similarly situated with a group of employees they wish to represent."   Beecher v. Steak N Shake Operations, Inc., 904 F. Supp. 2d 1289, 1297 (N.D. Ga. 2012).  As noted above, "a showing of similarity requires more than unsupported and generalized allegations," and the Plaintiffs must support their motion by "detailed allegations supported by

---

[4]    *See* Albert Decl. ¶ 22; Kniery Decl. ¶ 22; Kuechenmeister Decl. ¶ 22; Lacey Decl. ¶ 22.

affidavits."  Id. at 1298 (*citing* Grayson v. K Mart Corp., 79 F.3d 1086, 1096-97

(11th Cir. 1996)) (emphasis added).[5]

This is especially so where a complaint alleges that changes were made to

time records, since there can be numerous legitimate reasons for such changes, as

was the case here.  (Ex. A, Boone Decl. ¶ 30.)  Beecher, 904 F. Supp. 2d at 1299

(plaintiffs did not show that others were "similarly situated" where "legitimate

reasons exist for making changes" to time records).  It is also not unlawful for an

employer like Colibrium to "generally discourage[] managers from allowing

overtime work."  Id. at 1298.  *See* Chalker, 2013 WL 5954783, at *2.

In Beecher, the plaintiff presented declarations that "all ma[d]e the same

general assertions" that the employees "were not paid overtime" and were "not

paid for all hours worked."  904 F. Supp. 2d at 1294.  However, the plaintiffs failed

to "provide examples or dates of such allegedly unlawful activity."  Id.  The court

criticized the declarations as "replete with 'cookie-cutter' statements void of

---

[5]     *See* Chalker v. Burlington Coat Factory of Florida, LLC, No. 8:12-cv-2755-T-23TBM, 2013 WL 5954783 (M.D. Fl. Nov. 7, 2013) (the burden at the notice stage is "'not invisible," and "'federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees'") (citation omitted); Hart v. JPMorgan Chase Bank, N.A., No. 8:12-CV-00470-T-27TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012) (same).

specificity," id., but nonetheless considered them before eventually denying conditional certification.  Id. at 1298 n. 7.

In an analogous case, this Court ruled in Butz that plaintiff's "one-sentence statement on comparable job duties" was "made without any foundation for the statement offered," and did not provide a "sufficient factual basis to support" for conditional certification.  2014 WL 1513172, at *5-6.

The Court should also discount the bare-bone Declarations because the time records show they are inaccurate in basic respects.  For example, Mr. Kuechenmeister asserts that he worked for at least 48 hours during the week of November 2-8, 2014, which would be impossible because he worked only two days that week.   (Ex. A, Boone Decl. ¶ 53.)  The Declarants also incorrectly described their daily work schedules.  (Id. ¶ 52.)

In short, the four "cookie-cutter" Declarations do not meet even the lenient standard applicable at the conditional certification stage.  Even the case that Plaintiffs rely upon, Jewell v Aaron's, Inc., No. 1:12-cv-0563-AT, 2012 WL 2477039, at *4 (N.D. Ga. June 29, 2012) (Pl. Mem. at 8), declined to conditionally

certify a class based on the "bare-boned record originally presented by Plaintiffs" in over 20 declarations.[6]

B. Underline{The Determination of Liability For All SRs Would Require Thousands of Individualized Inquiries Into Each SR's Daily Activities}

The evidence necessary to determine the number of hours worked by each SR – and liability *vel non* for overtime wages under the FLSA – is highly individualized in two respects.

*First*, as described above, SRs had vastly different experiences in terms of their working time and daily activities. Some never approached working 40 hours in a week, and 27 SRs averaged less than 30 hours per workweek. (Ex. A, Boone Decl. ¶ 17.) Some received considerable overtime pay, while some never received any. (Id. ¶¶ 36-40.) Some (such as Mr. Kniery) frequently failed to log in or log out, while this occurred less frequently for others. (Id. ¶¶ 41, 42.) SRs worked at Colibrium for different lengths of time, with some working before or after the peak selling season. (Id. ¶¶ 13-14.) The SRs began and ended work on different daily work schedules. (Id. ¶¶ 20-21, 52.) The SRs also worked for different team leads,

---

[6]   Plaintiffs should not be permitted to submit additional declarations in their reply brief to try to salvage their motion.  As the court ruled in a conditional-certification case cited by Plaintiffs, the "Court should not consider evidence and arguments raised for the first time in a reply brief."  McCray v. Cellco Partnership, No. 1:10-cv-2821-SCJ, 2011 WL 2893061, at *3 (N.D. Ga. April 8, 2011).

with some making more time adjustments than others.  (Id. ¶¶ 46-47.)  Some SRs targeted special types of customers (*e.g.*, small businesses, or Native Americans).  (Id. ¶ 16.)

Individual SRs also had different experiences in terms of time adjustments.  Team leads made adjustments for Mr. Albert on 44 of 118 workdays (41%); for Mr. Kniery on 96 of 108 workdays (89%); for Mr. Kuechenmeister on 23 of 68 workdays (34%); and for Ms. Lacey on 84 of 145 workdays (58%).  (Ex. A, Boone Decl. ¶¶ 46-47.)  If extrapolated to the 62 SRs, the number of time adjustments would reach into the thousands.

*Second*, the evidence required to determine whether any SR worked overtime requires a highly individualized analysis of different data sources.  In addition to individuals' recollections, the data sources include, at the very least, (1) individual Replicon time records for each SR and the audit entries showing who made changes; (2) telephone logs of each SR's call-center calling activity; and (3) each SR's personal cellphone or email records.  (Ex. A, Boone Decl. ¶¶ 48-50.)

In similar cases involving allegations that supervisors manipulated time records, courts in this District have denied conditional certification due to the highly individualized nature of the analysis required to establish that class

members worked over 40 hours without receiving overtime pay.  This trend has become more pronounced recently (though court rulings are not all consistent).

In an early case, Williams v. Accredited Home Lenders, Inc., No. 1:05-cv-1681-TWT, 2006 WL 2085312, at *4 (N.D. Ga. July 25, 2006), the court denied a motion for conditional certification where proof of unpaid overtime liability would require an analysis of "computer activity reports, date and time stamped email and phone records" to show whether plaintiffs were "working before and after the times recorded on their timesheets."  The court ruled that the "fact-specific individualized inquiry into each Plaintiff's day-to-day activities" rendered the class "not sufficiently similarly situated" for a collective action.  Id.  The court considered such a collective action to be "unmanageable."  Id. at *5.

In the 2012 ruling in Beecher, the court denied conditional certification where, as here, the defendant-employer came forward with "individual time records" showing both "uncorrected and corrected" time records, and explained legitimate reasons for individual managers who made "the changes to the payroll records" to make correction to those records (including employees' "failing to clock in or clock out, or clock in under the wrong job code").  904 F. Supp. 2d at 1298-99.  The court found that "Plaintiffs' claims are too individualized to show a pattern, practice, policy, or commonality," and stressed the difficulty posed by

13

"'correction-by-correction mini-trials'" of numerous corrections.  The court declined to conditionally certify the class even though the putative class involved "the same positions, the same [employee] handbook, the same internal reports, and the same method for clocking in [and] clocking out." Id. at 1299.

In Lockman v. Youme Windyhill, LLC, Civ. No. 1:13-cv-2525-TWT , 2014 WL 3908590 (N.D. Ga. Aug. 11, 2014), the court denied conditional certification in an FLSA case involving employees of a single restaurant.  The court followed the Beecher ruling that conditional certification should be denied where "assessing the merits of each putative class member's claim would obviously require a highly individualized inquiry." Id. at *3.  The court found that certification was "especially inappropriate" since a "separate, extensive inquiry" would be required "for each class member" due, among other factors, to the need to "determine how many hours a particular employee actually worked during a given shift." Id. at **2, 3. The court distinguished such a case from a "traditional FLSA collective action where a court can determine liability by primarily looking to the plaintiffs' shared job description and official pay provisions."[7] Id. See Rindfleisch v.

---

[7] These principles were also addressed in Willoughby v. Youth Villages, Inc., 113 F. Supp. 3d 1265, 1269 (N.D. Ga. 2015), where the court decertified a collective action of employees of a residential treatment center where "numerous employees" had timekeeping records "corrected on a significant number of

Gentiva Health Services, Inc., 22 F. Supp. 3d 1295, 1303 (N.D. Ga. 2014) ("as a general rule, a group of opt-in plaintiffs cannot be similarly situated for purposes of a collective action when individual determinations regarding liability must be made").

Like this case, in Wallace v. Norcross Associates, LLC, No. 1:13-cv-1349-RWS, 2014 WL 1373659 (N.D. Ga. April 8, 2014), the court considered a motion for conditional certification of a putative class of telephone sales agents. Although the agents in Wallace were not all compensated in the same way, id. at *4, which differs from this case, the logic of the court's holding applies here:

> Litigating this case as a collective action would not assist the Court in determining liability for the entire class, as each employee would have to prove the number of hours worked, whether Defendants failed to compensate them for overtime hours, and whether Defendants failed to pay them any earned commissions. "In other words, there must be a fact-specific individualized inquiry into each Plaintiff's day-to-day activities."

Id. at *4 (citing Williams, 2006 WL 2085312, at *4) (emphasis added).

---

occasions." The court explained that certification is only appropriate where plaintiffs establish "liability on a class-wide basis," id. at 1272, and that was not the case because "individualized inquiries" were required on hours worked "on a week-to-week basis," the circumstances of "corrections," and the instructions given by "particular supervisor[s]" serve to "preclude collective determination." Id., at 1273, 1274.

Courts have also found that the existence of different supervisors, who supervised different employees' time, is a contributing factor in finding that putative class members are not similarly situated to plaintiffs. *See* <u>Beecher</u>, 904 F. Supp. 2d at 1297 (denying conditional certification where, among other factors, "individual store managers typically make the changes to the payroll records").[8]

This case likewise requires a highly individualized analysis of each SR's circumstances and work hours (using time records, telephone logs, cellphone records, and other evidence) in order to establish liability for unpaid overtime when scores of time adjustments were made. The Court should therefore deny the motion for conditional certification.

---

[8]     *See* <u>Chalker</u>, 2013 WL 5954783, at *3 (employees were not similarly situated where "plaintiff's evidence suggests, at most, that one or more store managers, acting independently and not in accord with a common policy (and in defiance of stated policy) coerced some employees into working overtime without compensation"); <u>Hart v. JPMorgan Chase Bank, N.A.</u>, No. 8:12-CV-00470-T-27TBM, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (noting that "putative class members were subject to, *inter alia*, different supervisors and] timekeeping practices" as factors in finding that putative class was not similarly situated and denying conditional certification.) *Cf.*, <u>Butz</u>, 2014 WL 1513172, at *5–6 (employees who worked in different locations were not similarly situated "especially when each location has a different on-site manager"); <u>Zulauf v. Amerisave Mortg. Corp.</u>, 911 F. Supp. 2d 1266,1274 (N.D. Ga. 2012) (collective action decertified where, *inter alia*, the evidence showed only that "some, but not all, SMP-manages encouraged a FLSA-violating policy" and did not show existence of such a policy "emanating from [defendant's] top management").

None of the cases cited by Plaintiffs (Pl. Mem. at 9) involved the conditional certification of a collective action where the defendant showed that a highly individualized analysis of numerous time adjustments would be required to establish liability.  Instead, those cases involved employers' objections that class members were not "similarly situated" in terms of "job functions," "job requirements," exempt status, or different compensation.[9]

Finally, none of the Declarations assert as a matter of fact that all SRs were "subject to the same unified policy, plan, or scheme, or "central control," to avoid overtime compensation.  Jewell, 2012 WL 2477039, at *3.  (Pl. Mem. at 9-10.) The Declarants do not allege that they ever heard Ms. Sharon Boone, who supervised the team leads, (a) instruct SRs to work off-the-clock, (b) instruct team leads to alter time records, or (c) that she was aware of or countenanced such

---

[9]   *E.g.*, Reece v. United Home Care of Atlanta, Inc., No. 1:12-cv-2070-RWS, 2013 WL 895088, at *3 (N.D. Ga. March 8, 2013) (defendant objected that all class members did not have "similar job functions"); Bradford v. CVS Pharmacy, Inc., No. 1:12-cv-1159-TWT, 2013 WL 425060, at **2-5 (N.D. Ga. Feb. 4, 2013) (defendant objected that class members had "different job requirements," worked at different locations, and that some were exempt employees); McCray, 2011 WL 2893061, at *2 (no evidence was presented to indicate that time records were allegedly manipulated by managers, though court was not concerned about the need for "adjudication through individualized inquiry"); Champenys v. Ferguson Enterprises, Inc., No. IP 02-535-CH K, 2003 WL 1562219, at *5 (S.D. Ind. March 11, 2003) (defendants objected that putative class members were not "not compensated on a similar basis").

conduct.  The Declarants vaguely state that they "believe" that the "defendant"

required "all SRs to perform work on-the-clock and/or off-the-clock for which they

were not fully compensated," but do not allege that they heard all supervisors

instruct "all" SRs to work off-the-clock or that SRs did so.[10]  None of the cases

cited by Plaintiffs (Pl. Mem. at 9) found sufficient evidence of a "uniform policy"

to justify conditional certification of a collective action based on such vague

allegations and "beliefs."[11]  Ms. Boone denies that there was any uniform policy to

deprive SRs of overtime pay.  (Ex. A, Boone Decl. ¶¶ 23, 51.)

---

[10]    *See* Albert Decl. ¶¶ 20, 22; Kniery Decl. ¶¶ 20, 22; Kuechenmeister Decl. ¶¶ 20, 22; Lacey Decl. ¶¶ 20, 22.  Plaintiffs' allegation that Colibrium was "aware" that the Declarants and "other SRs were working in excess of forty (40) hours per workweek" (id. ¶12) is of no significance because that fact alone does not indicate an awareness that overtime was not being paid.  Three of the four Declarants were paid for overtime at various times.  (Ex. A, Boone Decl. ¶¶ 36-40.)

[11]    *See* Jewell, 2012 WL 2477039, at *4 (court rejected "bare-boned" declarations, and court required movant to provide "specific facts and evidence the employee is aware of that suggests that Defendant's alleged FLSA violations are a systemic practice"); Lindberg v. UHS of Lakeside, LLC, 761 F. Supp. 2d 752, 756, 760 (W.D. Tenn. 2011) (plaintiff submitted declarations describing specific interactions with named supervisors); Scott v. Heartland Home Fin., Inc., No. 1:05-cv-2812, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006) (plaintiffs submitted 170 declarations and 22 depositions to show a common policy); Harper v. Lovett's Buffet, Inc., 185 F.R.D., 358, 363, 364-65 (M.D. Ala. 1999) (plaintiffs did not "present[] evidence of a uniform corporate practice discouraging overtime," but through 21 consents to opt-in presented evidence of a "pattern of potential FLSA minimum wage and overtime violations" at a single restaurant).

C.  <u>Plaintiffs Do Not Claim or Show That All Members of the Putative Class Worked Unpaid Overtime</u>

Courts have ruled that "a collective action is improper when actual liability cannot be established on a class-wide basis."  <u>Gentiva</u>, 22 F. Supp. 3d at 1303.  For a collective action seeking overtime damages, "every Plaintiff has to actually be owed overtime damages."  <u>Id</u>.  <i>See</i> <u>Willoughby</u>, 113 F Supp. 3d at 1275.

Plaintiffs' Declarations state that they "believe" that Colibrium "required all SRs" to perform work for which "they were not fully compensated,"[12] but do not assert that each SR at some point worked more than 40 hours a week and was not paid <u>overtime</u>.  In actuality, there were licensed agents whose time records indicate that they never worked close to 40 hours per week.  (Ex. A, Boone Decl. ¶ 17.)  One SR worked only two days.  (<u>Id</u>. ¶ 14.)

These facts show that it would be impossible for the Court to establish liability on a class-wide basis for all SRs.  Similar facts in <u>Gentiva</u> led the court to decertify a collective action.  The court found that "the fact that some Plaintiffs did not actually work overtime hours, creates a disparate factual setting among the individual Plaintiffs as the issue of liability is not susceptible to common proof."  22 F. Supp. 3d at 1303.  Although this case is at the "notice" stage, there would be

---

[12]  <i>See</i> Albert Decl. ¶ 22; Kniery Decl. ¶ 22; Kuechenmeister Decl. ¶ 22; Lacey Decl. ¶ 22.

no point in conditionally certifying a collective action when it would be doomed to be decertified.

### D. Plaintiffs Have Not Sufficiently Shown That There Are Other "Similarly Situated" Employees Who Desire to "Opt-In" to This Case

A court should not conditionally certify a collective action without first "satisfy[ing] itself that there are other employees of the . . . employer who desire to 'opt-in' and are similarly situated." Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). *See* Lovett v. SJAC Fulton Ind. I, LLC, No. 1:14-cv-983-WSD, 2015 WL 3889719, at *11 (N.D. Ga. June 23, 2015) ("Plaintiff must show there are other employees who would desire to opt in and that these other employees are similarly situated" based on more than "'unsupported expectations'").

Plaintiffs have failed to show that is so here, with two named Plaintiffs, and two opt-ins, out of 62 persons who worked as SRs in the relevant period. (Ex. A, Boone Decl. ¶ 14.)  That equates to 6.45% of the total group, which falls short of the 8-10% level that Plaintiffs note has been found to be a sufficient "showing of interest" to support a collective action. (Pl. Mem. at 11.)

The lack of interest is telling given that this suit was filed over six months ago, on August 22, 2016, and no one has opted in since Mr. Kuechenmeister and Ms. Lacey did so on the same day, September 29, 2016. (Dkt. Nos. 9, 11.)

Additionally, Plaintiffs have not shown <u>any</u> interest by other SRs who (unlike the two opt-ins) were outside the small group that Mr. Albert contacted about his commission and overtime concerns in April 2015.[13]   (Boone Decl. ¶¶ 57-58.)

Several courts have found that as few as two or three opt-ins could be sufficient.  However, they did so in different circumstances.

For example, in <u>Reece v. United Home Care of North America</u>, No. 1:12-cv-2070-RWS, 2013 WL 895088, at *4 (N.D. Ga. March 8, 2013), the court found that sufficient interest has been shown in a suit by a single plaintiff and two opt-ins from 13 facilities.  However, the court explained that "the fact that the *putative class* may be spread over a wide geographic area" supported "the conclusion that the interest shown was sufficient."  <u>Reece</u>, 2013 WL 895088, at *4 (emphasis in original).  That is not a factor here, since all SRs worked in the same location and one would expect it to be easier for Plaintiffs to attract opt-ins from a more cohesive group if any desired to join the case. (*E.g.*, Albert Decl. ¶ 17.)  In another

---

[13]     Contrary to Plaintiffs' brief, they and their counsel have been free to contact other SRs since the outset of this case.  (Pl. Mem. at 11.)   Obviously, they contacted Declarants Kuechenmeister and Lacey, who both signed opt-in statements on September 29, 2016.  (Dkt. Nos. 9, 11.)  Local Rule 23.1 pertains to class actions under Fed. R. Civ. P. 23, and not to collective actions.  Plaintiffs' counsel previously objected to Colibrium's request that Plaintiffs disclose communications with potential class members (Dkt. No. 22, at 11), and that objection would have been pointless had there been no such communications.

case, the court found sufficient interest where there were three opt-ins and one plaintiff, but these represented "22 percent of the class" who "may be spread over a wide geographic area."  Riddle v. Suntrust Bank, No. 1:08-cv-1411-RWS, 2009 WL 3148768, at *3 (N.D. Ga. Sept. 29, 2009).  The facts here are quite different, and involve a smaller percentage of the class in which all members were located in a more cohesive single facility.

In sum, the interest shown by putative class members in this case falls below the threshold generally found sufficient in similar cases.[14]

## III.   EVEN IF THE COURT GRANTS THE MOTION, THE PLAINTIFFS' PROPOSED NOTICE SHOULD BE REVISED

If the Court should grant the motion for conditional certification, it should take steps to ensure that the notice sent to potential opt-ins is "timely, accurate, and informative."  Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). Plaintiffs' proposed Notice (Dkt. No. 29-6) suffers from several problems.  It should be revised as indicated in the attached marked-up version.   (Exhibit B.)

---

[14]    E.g., Crawford v. Refinishing Touch, Inc., No. 1:15-cv-3027-SCJ, 2016 WL 7744391, at *2 (N.D. Ga. July 1, 2016) (sufficient interest shown where there were four plaintiffs and six opt-ins out of 40-50 class members); Randle v. Allconnect, Inc., No. 1:14-cv-245-WSD, 2014 WL 1795184, at *3 (N.D. Ga. May 6, 2014) (sufficient interest shown by plaintiff and six opt-ins working at call center); Kreher, 2006 WL 739572, at **2, 4 (conditional certification "barely" granted in case where eight declarations were submitted by plaintiffs and opt-ins).

The cover page of Plaintiffs' proposed Notice contains an overbroad description of the persons to whom the notice is addressed, as it is not restricted to SRs who worked on the Colorado HealthOp account.  That should be corrected.

The first sentence in the section titled "Your Right To Participate In This Suit" inappropriately refers to persons employed as SRs "during the last three years."  It should be revised to refer to those who worked on the Colorado HealthOp account from September 1, 2014 to March 31, 2015.

Plaintiffs' proposed Notice contains too scant a description of Colibrium's position, stating only that Colibrium has "denied any wrongdoing or liability and contests all claims that have been asserted."[15]  (Dkt. No. 29-6.)  Thus, the last sentence of the "Description of the Lawsuit" should be changed to read:

> Colibrium denies the allegations in this lawsuit initiated by two Sales Representatives.  Colibrium claims that it acted in good faith, complied with the Fair Labor Standards Act, and paid its employees all required overtime compensation.

---

[15]   Courts have allowed defendants to insert statements of defense into similar notices.  *See* Jackson v. Fed. Nat'l Mortg. Ass'n, 181 F. Supp. 3d 1044, 1062 (N.D. Ga. 2016) (allowing the addition of a statement of defendant's position "in non-argumentative fashion"); Page v. Hertz Corp., No. 1:12-cv-1965-WSD, Order Granting In Part Motion to Conditional Collective-Action Certification and Notice to the Class, ECF 60-1, at 5-6 (N.D. Ga. May 29, 2013) (Exhibit C hereto); Alexander v. CYDCOR, Inc., No. 1:11-CV-91578-SCJ, 2012 WL 1142449, at * 6 (N.D. Ga. Apr. 6, 2012).

Plaintiffs' proposed Notice gives putative opt-ins ninety (90) days from the date of the Notice to file a "Consent to Join."  (Pl. Mem., Ex. 5, at 3.)  That is an excessive period, and the response period should be limited to thirty (30) days. This Court has previously approved a thirty-day response deadline,[16] which is more reasonable here considering that this case has been pending for over six months and discovery is already underway.

This Court has permitted the inclusion of the name and address of Defendant's counsel, and should do so here.  Kreher, ECF 67-1, at 6.

Colibrium requests the addition of the following sentence:

> If you choose to file a "Consent to Join" and become a plaintiff in this action, you may be required to:  provide information or documents to counsel for Plaintiffs and to counsel for Defendant; give deposition testimony; and if the case proceeds to trial, you may be called to testify in Court.

Similar statements have been allowed by this Court and in this district.  *See* Page, ECF 60-1, at 5-6 (Ex. C); Bennett v. Advanced Cable Contractors, Inc., No. 1:12-cv-1150-RWS, 2012 WL 1600443 at *17 (N.D. Ga. May 7, 2012.)

---

[16]     *E.g.*, Kreher v. City of Atlanta, Georgia, No. 1:04-CV-2651-WSD, Order Granting Motion to Certify Class, ECF 67-1, at 3 (N.D. Ga. March 20, 2006) (Exhibit D hereto).  *Cf.,* Zulauf v. Amerisave Mortg. Corp., No. 1:11-cv-1784-WSD, 2011 WL 12677018, at *23 n.23 (N.D. Ga. Nov. 23, 2011) (45-day period).

Colibrium also objects to Plaintiffs' request that Colibrium provide them with personal information that includes the last four digits of SRs' social security numbers and dates of birth, or specific dates of employment within the seven month period at issue.  (Pl. Mem. at 15.)  This Court has rejected such requests. [17]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for conditional certification of a collective action.

| | |
|---|---|
| 1600 Atlanta Financial Center | **MORRIS, MANNING & MARTIN, LLP** |
| 3343 Peachtree Road NE | By: */s/John Lockett* |
| Atlanta, Georgia  30326 | John A. Lockett III |
| Telephone: (404) 233-7000 | Georgia Bar No. 455549 |
| Facsimile:  (404) 365-9532 | |
| jlockett@mmmlaw.com | *Of Counsel:* |
| | Daniel I. Prywes |
| | Admitted *Pro Hac Vice* |
| | MORRIS, MANNING & MARTIN, LLP |
| | 1401 Eye Street, N.W., Suite 600 |
| Date:  March 9, 2017 | Washington, DC  20005 |
| | Telephone: (202) 971-4182 |
| | Facsimile:  (202) 408-5146 |
| | dprywes@mmmlaw.com |
| | |
| | *Attorneys for Defendant HGS Colibrium, Inc.* |

---

[17]     *See* <u>Randle</u>, 2014 WL 1795184, at *4 (ordering defendant to disclose employees' names, contact information and dates of birth, but stating "the production of employees' social security numbers is not required at this time"); <u>Page v. Hertz Corp.</u>, No. 12-cv-1965-WSD, 2013 WL 2355544, at *4 n.5 (N.D. Ga. May 29, 2013) ("[t]he production of the employees' social security numbers is not required at this time").

25

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1D, the undersigned counsel certify that the foregoing has been prepared in Times New Roman 14 point, one of the four fonts and points approved by the Court in LR 5.1C.

_/s/John Lockett_
John A. Lockett III
Georgia Bar No. 455549

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BRADLEY ALBERT, PATRICK KNIERY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| | ) | FILE NO. 1:16-CV-03072-WSD |
| v. | ) ) | |
| HGS COLIBRIUM, INC., | ) ) | |
| Defendant. | ) ) | Before the Honorable William S. Duffey, Jr. |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have on this day, filed electronically via CM/ECF a true copy of the within and foregoing DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION UNDER THE FAIR LABOR STANDARDS ACT in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, addressed to the following:

> John R. Hunt, Esq.
> Stokes Wagner, ALC
> One Atlantic Center, Suite 2400
> 1201 W. Peachtree Street
> Atlanta, GA 30309

This 9th day of March, 2017.

> /s/John Lockett
> John A. Lockett III
> Georgia Bar No. 455549